FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Apr 10, 2019

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ROBERT G., | No. 1:18-CV-03064-JTR |
| Plaintiff, | |
| v. | ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

**BEFORE THE COURT** are cross-motions for summary judgment.  ECF Nos. 14, 15.  Attorney D. James Tree represents Robert G. (Plaintiff); Special Assistant United States Attorney Erin Frances Highland represents the Commissioner of Social Security (Defendant).  The parties have consented to proceed before a magistrate judge.  ECF No. 4.  After reviewing the administrative record and the briefs filed by the parties, the Court **GRANTS** Plaintiff's Motion for Summary Judgment; **DENIES** Defendant's Motion for Summary Judgment; and **REMANDS** the matter to the Commissioner for an immediate award of benefits pursuant to 42 U.S.C. §§ 405(g), 1383(c).

## JURISDICTION

Plaintiff was found eligible for Supplemental Security Income (SSI) as a minor on February 8, 2008.  Tr. 110.  Social Security reviewed his eligibility when he reached eighteen and found him no longer disabled as of July 1, 2010.  Tr. 96,

ORDER GRANTING PLAINTIFF'S MOTION - 1

124.  He challenged the cessation of benefits, and it was denied at reconsideration.
Tr. 128-30, 134.   Administrative Law Judge (ALJ) Caroline Siderius held a
hearing on November 2, 2011 and heard testimony from Plaintiff, Plaintiff's aunt,
psychological expert Marian Martin, Ph.D., and vocational expert Sharon Welter.
Tr. 42-94.  The ALJ issued an unfavorable decision on December 12, 2011.  Tr.
20-30.  The Appeals Council denied review on July 26, 2013.  Tr. 1-5.  Plaintiff
sought judicial review of the ALJ's decision from this Court on September 25,
2013.  Tr. 703-10.  This Court remanded the case for additional proceedings on
November 6, 2014[1].  Tr. 717-18, 724-36.  The Appeals Council issued an Order
remanding the case back to the ALJ on December 21, 2015.  Tr. 719-22.

Plaintiff filed new applications for Disability Insurance Benefits (DIB) and
SSI on October 20, 2014 while the 2010 cessation case was pending before this
Court.  Tr. 836, 904-18.  Social Security denied the DIB application on October 31,
2014 due to a lack of work credits.  Tr. 832-34.  Social Security approved the SSI
application on April 16, 2015 with a disability onset date of October 1, 2014.  Tr.
836-42.  The December 21, 2015 Order from the Appeals Council remanding the
2010 cessation case back to the ALJ specifically stated that it was neither affirming
nor reopening the April 16, 2015 award of benefits.  Tr. 721.  Thus, the relevant
period was limited from the date of cessation, July 1, 2010, through September 30,
2014.  Tr. 638-39.

ALJ Gordon W. Griggs held a remand hearing on January 19, 2017 to
address the 2010 cessation of benefits.  Plaintiff, his attorney, a medical expert, and
a vocational expert appeared, but no testimony was taken.  Tr. 671-72.  Instead, the

---

[1]The ALJ states the remand occurred in September 2014, Tr. 638, but this
was the date of the Report and Recommendation to remand.  Tr. 724-36.  District
Judge Rosanna Peterson signed an Order remanding the case to the ALJ on
November 6, 2014.  Tr. 717-18.

hearing was postponed at the request of Plaintiff's counsel.  Tr. 673-76.  ALJ
Kimberly Boyce held a subsequent hearing on December 19, 2017 and took the
testimony of vocational expert Kimberly Mullinex.  Tr. 662-70.  Plaintiff did not
attend the hearing, but his attorney waived his right to appear.  *Id*.  The ALJ issued
a decision on February 15, 2018 finding Plaintiff had not been disabled between
July 1, 2010 and September 30, 2014.  Tr. 638-54.  The Appeals Council did not
exercise jurisdiction in the period prescribed by 20 C.F.R. § 416.1484(a);
therefore, the ALJ's February 15, 2018 decision became the final decision of the
Commissioner, which is appealable to the district court pursuant to 42 U.S.C. §§
405(g), 1383(c).  Plaintiff filed this action for judicial review on April 20, 2018.
ECF Nos. 1, 5.

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcript, the
ALJ's decision, and the briefs of the parties.  They are only briefly summarized
here.

Plaintiff was 18 to 22 years old during the relevant period.  Tr. 173.  Plaintiff
completed the ninth grade and had not completed a GED.  Tr. 207.  He earned a
total of $93.00 in 2008 and $185.12 in 2009 working for Yakima Specialties, INC.
Tr. 921.  Throughout the record, this is referred to as a sheltered work program.
Tr. 570, 631-32.  He has not earned wages outside of a sheltered work
environment.  Plaintiff and his family report that he performs work for the family
recycling business.  Tr. 73-74, 84.  Plaintiff reported that he did this in a family
setting for three or four hours a day.  Tr. 73-74.  His aunt reported that he struggles
to maintain focus during this kind of work.  Tr. 84.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in
medical testimony, and resolving ambiguities.  *Andrews v. Shalala*, 53 F.3d 1035,
1039 (9th Cir. 1995).  The Court reviews the ALJ's determinations of law de novo,

deferring to a reasonable interpretation of the statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id.* at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097. If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987). Nevertheless, a decision supported by substantial evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).

## SEQUENTIAL EVALUATION PROCESS

Individuals who are eligible for SSI benefits as children under the age of eighteen must have their disability redetermined under the rules for disability used for adults upon reaching the age of eighteen. 42 U.S.C. § 1382c(a)(3)(H)(iii). The medical improvement review set forth in 42 U.S.C. § 1382c(a)(4) does not apply to disability redeterminations made at age 18. *Id.*

The Commissioner has established a five-step sequential evaluation process for determining whether an adult is disabled. 20 C.F.R. § 416.920(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-99. This burden is met once the claimant establishes that physical or mental impairments prevent him from

engaging in his previous occupations. 20 C.F.R. § 416.920(a)(4). If the claimant cannot do his past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work, and (2) the claimant can perform specific jobs which exist in the national economy. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193-94 (9th Cir. 2004). If the claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. § 416.920(a)(4)(v).

## ADMINISTRATIVE DECISION

On February 15, 2018, the ALJ issued a decision finding Plaintiff was not disabled as defined in the Social Security Act from July 1, 2010 through September 30, 2014.

At step one, the ALJ found Plaintiff had been eligible for SSI benefits prior to July 1, 2010. Tr. 641. Otherwise, the ALJ made no determination regarding Plaintiff's income for the relevant period.

At step two, the ALJ determined that between July 1, 2010 through September 30, 2014 Plaintiff had the following severe impairments: attention deficit hyperactivity disorder (ADHD); borderline intellectual functioning; affective disorder; and substance use disorder. Tr. 641.

At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments between July 1, 2010 and September 30, 2014. Tr. 641.

At step four, the ALJ assessed Plaintiff's residual function capacity and determined he could perform a range of work at all exertional levels with the following limitations:

> He could understand, remember, and carry out unskilled, routine, and repetitive work that could be learned by demonstration, and in which tasks to be performed are predetermined by the employer. He could cope with occasional work setting change and occasional interaction

with supervisors.  He could work in proximity to coworkers, but not in a team or cooperative effort.  He could perform work that did not require interaction with the general public as an essential element of the job, but occasional incidental contact with the general public was not precluded.  Within these parameters, he could meet ordinary and reasonable employer expectations regarding attendance, production, and workplace behavior.

Tr. 645.  The ALJ found Plaintiff had no past relevant work.  Tr. 652.

At step five, the ALJ determined that, considering Plaintiff's age, education, work experience and residual functional capacity, and based on the testimony of the vocational expert, there were other jobs that exist in significant numbers in the national economy Plaintiff could perform, including the jobs of industrial cleaner, kitchen helper, and laundry worker.  Tr. 653.  The ALJ concluded Plaintiff was not under a disability within the meaning of the Social Security Act from July 1, 2010, through September 30, 2014.  Tr. 654.

## ISSUES

The question presented is whether substantial evidence supports the ALJ's decision denying benefits and, if so, whether that decision is based on proper legal standards.  Plaintiff contends the ALJ erred by failing to properly address the medical opinions in the file.  ECF No. 14.

## DISCUSSION[2]

Plaintiff argues the ALJ failed to properly consider and weigh the medical

---

[2]In *Lucia v. S.E.C.*, 138 S.Ct. 2044 (2018), the Supreme Court recently held that ALJs of the Securities and Exchange Commission are "Officers of the United States" and thus subject to the Appointments Clause.  To the extent Lucia applies to Social Security ALJs, the parties have forfeited the issue by failing to raise it in their briefing.  *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (the Court will not consider matters on appeal that were not specifically addressed in an appellant's opening brief).

opinions expressed by examining psychologists Christopher Clark, M.Ed., Tae-Im Moon, Ph.D., Wendi Wachsmuth, Ph.D., and Mark Duris, Ph.D., and the opinion expressed by reviewing psychologist Bruce Eather, Ph.D. ECF No. 14.

In weighing medical source opinions, the ALJ should distinguish between three different types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and, (3) nonexamining physicians who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The ALJ should give more weight to the opinion of a treating physician than to the opinion of an examining physician. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). Likewise, the ALJ should give more weight to the opinion of an examining physician than to the opinion of a nonexamining physician. *Id.*

When an examining physician's opinion is not contradicted by another physician, the ALJ may reject the opinion only for "clear and convincing" reasons, and when an examining physician's opinion is contradicted by another physician, the ALJ is only required to provide "specific and legitimate reasons" to reject the opinion. *Lester*, 81 F.3d at 830-31. The specific and legitimate standard can be met by the ALJ setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings. *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). The ALJ is required to do more than offer her conclusions, she "must set forth [her] interpretations and explain why they, rather than the doctors', are correct." *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988).

1.    **Christopher Clark, M.Ed.**

On November 12, 2010, Dr. Clark completed a Psychological/Psychiatric Evaluation form for the Washington Department of Social and Health Services (DSHS). Tr. 567-72. He diagnosed Plaintiff with oppositional defiant disorder and Attention-Deficit/Hyperactivity Disorder (ADHD), combined type. Tr. 568.

He opined that Plaintiff had a marked limitation in six functional areas and a moderate limitation in two functional areas. Tr. 569. He included a November 24, 2010 addendum stating, "Revisions in functional ratings are now based on client's ability to function in a competitive higher-performance employment environment, and not in the former, sheltered workshop setting, i.e., Yakima Specialties." *Id.* Under "Additional Remarks" he stated the following:

> [Plaintiff] appears to have lower-than-average intellectual functioning, but presents as affable and cooperative with the evaluation today. He had a successful work trial at Yakima Specialties in 2009, and appears to be capable of that level of employment function.

> It is not likely he would tolerate a competitive work environment, without significant exacerbation in symptomology or irritability and impulsive behavior, and ultimate termination.

Tr. 570.

The ALJ gave minimal weight to this opinion because (1) "Dr. Clark provided minimal and contradictory explanation for his multifaceted assessment of psychological disability," and Dr. Clark's other explanations for his opinions were "conclusive and equivocal," (2) his opinion was inconsistent with Plaintiff's reported activities, (3) his opinion was not supported by his evaluation, and (4) his opinion was not supported by other psychological evaluations in the record. Tr. 649.

The ALJ's first reason for rejecting Dr. Clark's opinion, that he made "minimal and contradictory explanation for his multifaceted assessment of psychological disability," is not supported by substantial evidence. An ALJ may cite to internal inconsistencies in evaluating a physician's report. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). Here, the ALJ found Dr. Clark's observations inconsistent with the opined marked limitations: "[r]eports no problems in prior work placement in 2009" was the observation for a marked

limitation in maintaining appropriate behavior in a work setting and "[e]njoyed working in the sheltered workshop, with no reported interpersonal conflict," was the observation for the marked limitation in performing routine tasks. Tr. 649 *citing* Tr. 569. Plaintiff argues that the November 24, 2010 addendum explains this perceived inconsistency. ECF No. 14 at 13. Dr. Clark's opinion appears four times in the record. Tr. 544-47, 550-55, 561-66, 567-572. Dr. Clark's opinion is drastically different the first time the DSHS form appears: He stated that Plaintiff had a mild limitation in maintaining appropriate behavior and a mild limitation in performing routine tasks. Tr. 546. The observations for these mild limitations are "Reports no problems in prior work placement in 2009," and "Enjoyed working in the sheltered workshop, with no reported interpersonal conflict," respectively. *Id*. Therefore, these observations matched Dr. Clark's original opinion, which apparently was based on Plaintiff's ability to work in a sheltered work environment. *See* Tr. 552 (stating "Revisions in functional ratings are now based on client's ability to function in a competitive, higher-performance employment environment, and not in the former, sheltered workshop setting, i.e., Yakima Specialties."). It appears that the changes to the opinion made on November 24, 2010 only modified the degree of limitation opined and not the observations. Tr. 546 *compare to* Tr. 552. As such, the ALJ's conclusion that the observations made by Dr. Clark were inconsistent with the limitation opined is not supported by substantial evidence when the record is considered as a whole.

Additionally, the ALJ found that "Dr. Clark's other opinions were only supported by the statements 'rapid memory decay and poor sophistication in intellectual functioning' and 'level of sophistication probably precludes competitive work environment.'" Tr. 649 *citing* Tr. 569. He found these "conclusive and equivocal statements" were insufficient to support the limitation opined. Tr. 649. However, Dr. Clark provided other statements to support his opinion. He stated "[i]t is not likely [Plaintiff] would tolerate a competitive work

environment, without significant exacerbation in symptomology of irritability and impulsive behavior, and ultimate termination." Tr. 569.  Additionally, he repeatedly found Plaintiff capable of only sheltered employment.  Tr. 569-70. Therefore, Dr. Clark supported his opinion with multiple statements, and the ALJ's reasons are not supported by substantial evidence.

The ALJ's second reason for rejecting the opinion, that it was inconsistent with his reported activities, is not specific and legitimate.  An ALJ may reject a contradicted physician's opinion if it is inconsistent with a claimant's daily activities.  *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 601-02 (9th Cir. 1999) (considering an inconsistency between a treating physician's opinion and a claimant's daily activities is a specific and legitimate reason to discount the treating physician's opinion).  The ALJ found that Plaintiff's activities of visiting his friends and playing video games were inconsistent with the statements "rapid memory decay and poor sophistication in intellectual functioning," and "level of sophistication probably precludes competitive work environment."  Tr. 649. However, the ALJ never set forth how Plaintiff's activities of visiting friends and playing video games were inconsistent with these observations.  Likewise, the ALJ concluded that Plaintiff performing unpaid work dismantling automobiles for scrap was inconsistent with Dr. Clark's opinion but failed to state how.  Tr. 649.  She emphasized that Dr. Clark appeared unaware of this unpaid work activity[3].  *Id*. However, without some finding of how the unpaid work activity contradicted the opinion, Dr. Clark's knowledge of it is irrelevant.

_____

[3]The term "unpaid work activity" mirrors the ALJ's language.  However, this activity was performed for family and the ALJ made no finding regarding the expected output, performance, social interaction, or skill attached to the activity. Therefore, the Court is not finding that the activity equates to the level of skills and responsibility required to maintain a part time job.

The ALJ's third reason, that the opinion was not supported by Dr. Clark's evaluation, is not specific and legitimate.  An ALJ may cite internal inconsistencies in evaluating a physician's report.  *Bayliss*, 427 F.3d at 1216.  The ALJ found Dr. Clark's notations of normal eye contact, smiling but constricted affect, cooperative behavior, impaired speech, fair attention and concentration, circumstantial thought processes, and poor memory failed to support any significant limitations in social interaction.  Tr. 649.  However, the ALJ's rationale appears to associate affable affect with the ability to communicate and perform effectively in a work setting and the ability to response appropriately to stress.  Dr. Clark opined that Plaintiff had a marked limitation in the ability to communicate and perform effectively in a work setting with public contact and a moderate limitation in the ability to communicate and perform effectively in a work setting with limited public contact.  Tr. 569.  Dr. Clark's statements demonstrate that Plaintiff's limitations were associated with his intellectual abilities and coping skills and not his affect:  "Level of sophistication probably precludes competitive environment," Tr. 569, Plaintiff "appears to have lower-than-average intellectual functioning, but presents as affable and cooperative with the evaluation today," Tr. 570, and "It is not likely he would tolerate a competitive work environment, without significant exacerbation in symptomology of irritability and impulsive behavior, and ultimate termination," Tr. 570.  As such, the ALJ's reason is not specific and legitimate.

The ALJ's fourth reason, that the opinion was inconsistent with the other psychological assessments in the record, is not supported by substantial evidence.  Inconsistency with the majority of objective evidence is a specific and legitimate reason for rejecting physician's opinions.  *Batson*, 359 F.3d at 1195.  The ALJ found that examinations performed before and after Dr. Clark's found normal affect, normal speech, normal thought process, normal memory, and normal concentration.  Tr. 649 *citing* Tr. 493-95 (A March 15, 2010 treatment note in which Plaintiff was appropriately talkative, had linear associations, and had no

evidence of psychosis.); Tr. 529-31 (An April 12, 2010 treatment note in which Plaintiff was appropriately talkative, had linear associations, had no evidence of psychosis, was attentive, did not display problems with orientation, memory, or general fund of knowledge, and had a euthymic affect); Tr. 955-59 (Dr. Duris' September 17, 2014 evaluation finding Plaintiff had a normal speech, attitude, behavior, mood and affect); Tr. 960-64 (An October 9, 2014 evaluation in which Plaintiff had normal orientation, behavior, speech, affect, mood, memory, attitude, attention, and thought process); Tr. 991-95 (Dr. Wachsmuth's October 15, 2013 evaluation in which Plaintiff had normal speech, attitude, behavior, mood, and affect); Tr. 1016-19 (Dr. Moon's March 29, 2012 evaluation in which Plaintiff had normal attitude, behavior, mood, affect, content of thought, stream of mental activity, and orientation).

The ALJ cited these records as evidence of normal findings on mental status examinations. Tr. 649. In doing so, she ignored the evidence from these evaluations that supported Dr. Clark's opinion. Dr. Duris, like Dr. Clark, found Plaintiff had a marked limitation in the abilities to communicate and perform effectively in a work setting and to maintain appropriate behavior in a work setting. Tr. 957-58. Dr. Wachsmuth, like Dr. Clark, found Plaintiff had marked limitations in the abilities to understand, remember, and persist in tasks by following detailed instructions, to be aware of normal hazards and take appropriate precautions, to communicate and perform effectively in a work setting, and to maintain appropriate behavior in a work setting. Tr. 993. Dr. Moon, like Dr. Clark, found Plaintiff capable of work only with "support and some accommodations." Tr. 1017. As such, the ALJ's reliance on this evidence as a contradiction to Dr. Clark's opinion is not supported by substantial evidence. *See Garrison* v. *Colvin*, 759 F.3d 995, 1017 n.23 (9th Cir. 2014) (noting that ALJs may not cherry-pick from mixed results).

In sum, the ALJ erred in her treatment of Dr. Clark's opinion.

## 2.    Tae-Im Moon, Ph.D.

On March 29, 2012, Dr. Moon completed a Psychological/Psychiatric Evaluation for DSHS.  Tr. 1012-15.  She diagnosed Plaintiff with ADHD combined type by history, a history of oppositional defiance disorder and separation anxiety disorder, and a rule out learning disorder not otherwise specified.  Tr. 1012.  Dr. Moon stated the following:

> His untreated symptoms of ADHD and learning problems are likely to interfere with his ability to learn quickly and to reliably perform work. By his own report, he has difficult time sustaining focus.  His low frustration tolerance and anger may interfere with his ability to get along with supervisors and co-workers.  The [claimant] has never been employed.  With support and some accommodations, he may be able to work in construction, a job he expressed an interest in.

Tr. 1013.

The ALJ gave minimal weight to this opinion because (1) it was equivocal, vague, and contradictory, (2) it was based on Plaintiff's functioning without medication, (3) it was inconsistent with Dr. Moon's examination, (4) Dr. Moon relied heavily on Plaintiff's self-reports, and (5) it was inconsistent with Plaintiff's reported activities.  Tr. 650.

The ALJ's first reason, that the opinion was equivocal, vague, and contradictory, is not specific and legitimate.  The ALJ is tasked with resolving conflicts in medical testimony and resolving ambiguities.  *Andrews*, 53 F.3d at 1039.  Simply labeling an opinion vague and contradictory with nothing more does not meet the specific and legitimate standard.  Defendant cites to the terms "may" and "interfere" as the vague terms.  ECF No. 15 at 8.  However, the ALJ did not state what part of the opinion lacked specificity or how the opinion was contradictory.  Tr. 650.  Therefore, Defendant's explanation amounts to a *post-hoc* rationalization, which will not be considered by this Court.  *See Orn*, 495 F.3d at 630 (The Court will "review only the reasons provided by the ALJ in the disability

determination and may not affirm the ALJ on a ground upon which he did not rely."). This reason does not meet the specific and legitimate standard. *See Embrey*, 849 F.2d at 421-22 (The ALJ is required to do more than offer her conclusions, she "must set forth [her] interpretations and explain why they, rather than the doctors', are correct.").

The ALJ's second reason, that the opinion was based on Plaintiff's functioning without medication, is not specific and legitimate. Neither party addressed this reason in their briefing. ECF Nos. 14, 15, 16. Generally, the fact that a condition can be remedied by medication is a legitimate reason for discrediting an opinion. *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). However, there is no finding by the ALJ that the medication would remedy Plaintiff's impairments. The ALJ cites Plaintiff's report that medication helped control his unstable moods, Tr. 643, and his aunt's report that his outbursts persisted even with medication, Tr. 646. The ALJ also relies heavily on the opinion of Dr. Martin that Plaintiff was "fairly well managed" on medications. Tr. 652. But, the ALJ did not find that Plaintiff's impairment was remedied with medication. As such, this reason is not specific and legitimate.

The ALJ's third reason, that the opinion was inconsistent with Dr. Moon's examination, is not supported by substantial evidence. An ALJ may cite internal inconsistencies in evaluating a physician's report. *Bayliss*, 427 F.3d at 1216. Here, the ALJ found that Dr. Moon's findings of cooperative behavior, normal eye contact, appropriate speech, appropriate affect, logical thought process, and good memory did not support the degree of impairment opined. Tr. 650. However, the ALJ failed to address Dr. Moon's finding that while Plaintiff's recent memory was good, his remote memory was only rated as fair, he was not able to complete three step instructions, he failed to accurately respond to both the questions addressing fund of knowledge, he was unable to spell WORLD backwards, he demonstrated limitations in abstract thinking, and he had limited insight and judgment. Tr. 1015.

Again, the ALJ selected only the benign findings on examination to the exclusion of the abnormal findings. The abnormal findings, such as the inability to perform three step tasks, is consistent with Dr. Moon's opinion. Therefore, this reason is not supported by substantial evidence.

The ALJ's fourth reason, that Dr. Moon relied heavily on Plaintiff's self-reports, is not specific and legitimate. A doctor's opinion may be discounted if it relies on a claimant's unreliable self-report. *Bayliss*, 427 F.3d at 1217; *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). But the ALJ must provide the basis for her conclusion that the opinion was based on a claimant's self-reports. *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014). The ALJ concluded that Dr. Moon relied more heavily on Plaintiff's self-reports than objective evidence because his mental status exam showed benign results. Tr. 650. However, this conclusion was not supported by objective evidence. *See supra*. Therefore, this reason fails to meet the specific and legitimate standard.

The ALJ's fifth reason, that the opinion was inconsistent with Plaintiff's reported activities, is not specific and legitimate. An ALJ may reject a contradicted physician's opinion if it is inconsistent with a claimant's daily activities. *See Morgan*, 169 F.3d at 601-02 (considering an inconsistency between a treating physician's opinion and a claimant's daily activities is a specific and legitimate reason to discount the treating physician's opinion). The ALJ stated that the opinion was inconsistent with Plaintiff's "work activity for his family's business and his regular social activities." Tr. 650. Once again, the ALJ failed to state how these activities were inconsistent with the opinion. Therefore, this fails to meet the specific and legitimate standard. *See Embrey*, 849 F.2d at 421-22 (The ALJ is required to do more than offer her conclusions, she "must set forth [her] interpretations and explain why they, rather than the doctors', are correct.").

In sum, the ALJ failed to provide a specific and legitimate reason supported by substantial evidence to reject the opinion of Dr. Moon.

### 3.  Wendi Wachsmuth, Ph.D.

Dr. Wachsmuth completed a Psychological/Psychiatric Evaluation for DSHS on October 16, 2013.  Tr. 975-79.  She diagnosed Plaintiff with ADHD, combined type by history and found no physical diagnosis, but deferred to physician for an assessment of possible fetal alcohol spectrum disorder.  Tr. 976.  She opined that Plaintiff had a severe limitation in the ability to set realistic goals and plan independently, marked limitations in six areas of mental functioning and moderate limitations in the remaining six areas of mental functioning addressed on the form.  Tr. 977.  She estimated that Plaintiff would be impaired at this level with available treatment for six to nine months.  *Id*.  Additionally, she stated the following:

> [Plaintiff]'s facial features included a smooth philtrum (grove between the nose and upper lip), a thin upper lip, and somewhat shortened eye width.  [A]lthough these features are not severe, it is likely, by his grandmother's report, that the client's mother consumed alcohol while she was pregnant, and his ADHD and other neurological impairments may be attributable to this.  [N]europsychological testing is recommended to determine the extent to which the client's neurological system has been affected.

*Id*.

The ALJ gave minimal weight to the opinion because (1) it was inconsistent with Dr. Wachsmuth's examination findings, (2) it was based heavily on Plaintiff's subjective reports, and (3) it was inconsistent with Plaintiff's reported activities.  Tr. 651.

The ALJ's first reason, that the opinion was inconsistent with Dr. Wachsmuth's examination findings, is not supported by substantial evidence.  An ALJ may cite internal inconsistencies in evaluating a physician's report.  *Bayliss*, 427 F.3d at 1216.  The ALJ found the opinion inconsistent with Dr. Wachsmuth's findings that Plaintiff had a cooperative behavior, normal affect, normal speech, normal thought process, normal memory, and normal concentration.  Tr. 651.

However, the evaluation contains other observations made by Dr. Wachsmuth which supports her opinion, including that Plaintiff "had trouble waiting in the waiting room and sitting still for this evaluation." Tr. 948. Additionally, Dr. Wachsmuth found (1) Plaintiff had an abnormal fund of knowledge, stating he did not know any immediately previous presidents, (2) Plaintiff had an abnormal abstract thought, stating he "was unable to state the meaning of 'don't cry over spilled milk' and 'every cloud has a silver lining,'" (3) Plaintiff could only repeat three digits backwards, (4) Plaintiff had some trouble with serial sevens, and (5) Plaintiff had abnormal insight and judgment, stating he "had chosen not to take medication for ADHD although he has severe symptoms and desires to have a job as a mechanic." Tr. 951. Here again, the ALJ relied on the benign findings to the exclusion of the abnormal findings in the evaluation. As such, the ALJ's conclusion was not supported by substantial evidence.

The ALJ's second reason, that the opinion was based heavily on Plaintiff's subjective reports, is not specific and legitimate. A doctor's opinion may be discounted if it relies on a claimant's unreliable self-report. *Bayliss*, 427 F.3d at 1217; *Tommasetti*, 533 F.3d at 1041. But the ALJ must provide the basis for her conclusion that the opinion was based on a claimant's self-reports. *Ghanim*, 763 F.3d at 1162. Here, the ALJ concluded Dr. Wachsmuth's opinion was based on Plaintiff's self-report because her mental status examination did not support the opinion. Tr. 651. However, this finding was not supported by substantial evidence. *See supra*. Therefore, this reason is also not specific and legitimate.

The ALJ's third reason, that the opinion was inconsistent with Plaintiff's reported activities, is not specific and legitimate. An ALJ may reject a contradicted physician's opinion if it is inconsistent with a claimant's daily activities. *See Morgan*, 169 F.3d at 601-02 (considering an inconsistency between a treating physician's opinion and a claimant's daily activities is a specific and legitimate reason to discount the treating physician's opinion). The ALJ found

Plaintiff's work for his family's recycling business, his regular social activities and his independent activities of daily living were inconsistent with the opinion. Tr. 651. Once again, the ALJ failed to state how these activities were inconsistent with the opinion. Therefore, this fails to meet the specific and legitimate standard. *See Embrey*, 849 F.2d at 421-22 (The ALJ is required to do more than offer her conclusions, she "must set forth [her] interpretations and explain why they, rather than the doctors', are correct.").

In sum, the ALJ failed to provide a specific and legitimate reason supported by substantial evidence to reject the opinion of Dr. Wachsmuth.

**4. Mark Duris, Ph.D.**

Dr. Duris completed a Psychological/Psychiatric Evaluation for DSHS on September 17, 2014. Tr. 980-84. He diagnosed Plaintiff with Intermittent Explosive Disorder, ADHD not otherwise specified (Adult) inattentive type, Cannabis Abuse, Rule Out Borderline Intellectual Functioning, and Rule Out Learning Disorder not otherwise specified. Tr. 982. He opined that Plaintiff had a marked limitation in four areas of mental functioning and a moderate limitation in five areas of mental functioning. Tr. 982-83. He stated that Plaintiff's current impairments were not the primary result of alcohol or drug use. Tr. 983. He estimated that this level of impairment would persist with available treatment for twelve months. *Id.*

The ALJ gave the opinion minimal weight, "except to agree that the claimant's evidence during the relevant period is consistent with minimal limitations in his abilities to make simple decisions, to learn new tasks, or to persist with simple instructions." Tr. 651. He assigned the opinion such little weight because (1) his examinations findings either contradicted or failed to support the moderate to marked limitations opinion, (2) the opinion was inconsistent with Plaintiff's reported activities, and (3) the opinion was based on Plaintiff's subjective reports. *Id.*

The ALJ's first reason, that Dr. Duris' examination was inconsistent with the opinions, is not supported by substantial evidence. An ALJ may cite to internal inconsistencies in evaluating a physician's report. *Bayliss*, 427 F.3d at 1216. Again, the ALJ set forth normal results in Plaintiff's mental status examination as inconsistent with the opinion. The ALJ failed to address the abnormal findings of the mental status exam. While Dr. Duris found Plaintiff's affective expression was normal, it was "reflective of a highly immature young person." Tr. 984. Plaintiff had an abnormal fund of knowledge, which Dr. Duris expressed as "Poor based on general knowledge questions asked." *Id*. He was unable to demonstrate abstract or concrete thought. *Id*. His insight and judgment were deemed poor. *Id*. The ALJ noted that Plaintiff had abnormal results in fund of knowledge and insight and judgment but failed to address the larger issue of Plaintiff's inability to demonstrate abstract or concrete thought. Tr. 651. As such, the ALJ's conclusion is not supported by substantial evidence.

The ALJ's second reason, that the opinion was inconsistent with Plaintiff's reported activities, is not specific and legitimate. An ALJ may reject a contradicted physician's opinion if it is inconsistent with a claimant's daily activities. *See Morgan*, 169 F.3d at 601-02 (considering an inconsistency between a treating physician's opinion and a claimant's daily activities is a specific and legitimate reason to discount the treating physician's opinion). The ALJ found Plaintiff's ability to maintain all his activities of daily living and his regular work activity for his family were inconsistent with the opinion. Tr. 651. Once again, the ALJ failed to state how these activities were inconsistent with the opinion. Therefore, this fails to meet the specific and legitimate standard. *See Embrey*, 849 F.2d at 421-22 (The ALJ is required to do more than offer her conclusions, she "must set forth [her] interpretations and explain why they, rather than the doctors', are correct.").

The ALJ's third reason, that the opinion was based on Plaintiff's subjective

reports, is not specific and legitimate.  A doctor's opinion may be discounted if it relies on a claimant's unreliable self-report.  *Bayliss*, 427 F.3d at 1217; *Tommasetti*, 533 F.3d at 1041.  But the ALJ must provide the basis for her conclusion that the opinion was based on a claimant's self-reports.  *Ghanim*, 763 F.3d at 1162.  Here, the ALJ concluded Dr. Duris' opinion was based on Plaintiff's self-report because his mental status examination did not support the opinion. Tr. 651.  However, this finding was not supported by substantial evidence.  *See supra*. Therefore, this reason is also not specific and legitimate.

In sum, the ALJ failed to provide specific and legitimate reasons for rejecting Dr. Duris' opinion.

## 5.    Bruce Eather, Ph.D.

On October 6, 2014, Dr. Eather reviewed Dr. Duris' September 17, 2014 evaluation, Dr. Wachsmuth's October 15, 2013 evaluation, and a Disability/Incapacity Determination.  Tr. 970-74.  The Determination found Plaintiff's mental impairments to be concentration deficit, inattention, impulsivity, and aggressivity all with the severity report of four.  Tr. 974.  The Determination also gave Plaintiff marked limitations in four areas of mental functioning and a moderate limitation in five additional areas of mental functioning.  Tr. 973.  Dr. Eather found that the severity and functional limitations were supported by the available medical evidence.  Tr. 970.  The report found an onset date of October 15, 2013 and a duration of twelve months, which Dr. Eather also found to be supported.  Tr. 970-71.

The ALJ gave Dr. Eather's opinion minimal weight for the same reasons she rejected the opinion of Dr. Duris.[4]  Tr. 651.  Here, Dr. Eather's opinion was based

---

[4]Plaintiff's briefing addresses Dr. Eather's opinion in unison with Dr. Duris' opinion, recognizing that the functional limitations opined are identical.  ECF No. 14 at 11, 18-19.

on the opinions of Dr. Duris and Dr. Wachsmuth. Both opinions the ALJ rejected without a legally sufficient reason. Therefore, the ALJ's rejection of Dr. Eather's opinion cannot be supported by substantial evidence.

**6.    Credit-As-True Rule**

Plaintiff urges the Court to apply the credit-as-true rule and remand this case for an immediate award of benefits.

Under the credit-as-true rule, where (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence was credited as true, the ALJ would be required to find the claimant disabled on remand, we remand for an award of benefits. *Revels v. Berryhill*, 874 F.3d 648, 668 (9th Cir. 2017). Even when the three prongs have been satisfied, the Court will not remand for immediate payment of benefits if "the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Garrison*, 759 F.3d at 1021.

The first prong of the credit-as-true rule is satisfied because the record is fully developed and there is no indication that further proceedings would serve a useful purpose. This Court remanded this case to the agency for further proceedings once before. Tr. 717-18, 724-36. Additionally, this case addresses a closed period from July 1, 2010 through September 30, 2014. Plaintiff has been deemed eligible for benefits prior to July 1, 2010 and after September 30, 2014. Tr. 110, 124, 836. The record contains multiple opinions from the relevant period which find Plaintiff disabled and his substance abuse disorder not material. Tr. 569, 977, 982-83, 1013.

The second prong of the credit-as-true rule is satisfied because, the ALJ improperly rejected the opinions of Dr. Clark, Dr. Moon, Dr. Wachsmuth, Dr. Duris, and Dr. Eather. *See supra*.

The third prong of the credit-as-true rule is satisfied because the ALJ would have to find Plaintiff disabled on remand if Dr. Clark's opinion that Plaintiff could not maintain competitive employment were credited as true. Furthermore, the record contains the opinions of multiple psychologists who also found Plaintiff incapable of maintaining competitive work during the relevant period which the ALJ also failed to provide specific and legitimate reasons for rejecting. *See supra*.

Finally, the record does not raise any serious doubt that Plaintiff was disabled during the relevant period. The only opinions that found Plaintiff capable of competitive work were (1) the opinion of a non-examining psychologist in November of 2011, who did not review the evaluations of Dr. Moon, Dr. Wachsmuth, and Dr. Duris, Tr. 47-70, and (2) the June 2010 opinion of Dr. Towes, which is outside the relevant period, Tr. 498-507. These opinions cannot outweigh the credited opinions of Dr. Clark, Dr. Wachsmuth, and Dr. Duris. *See Orn*, 495 F.3d at 631(The ALJ should give more weight to the opinion of an examining physician than to the opinion of a nonexamining physician.); See *Fair v. Bowen*, 885 F.2d 597, 600 (9th Cir. 1989) (Medical opinions that predate the alleged onset of disability are of limited relevance).

Because the three prongs of the credit-as-true rule are satisfied, and the record does not raise any serious doubt that Plaintiff was disabled during the relevant period, the case is remanded to the agency for immediate payment of benefits.

## CONCLUSION

Accordingly, **IT IS ORDERED:**

1.    Defendant's Motion for Summary Judgment, **ECF No. 15**, is **DENIED**.

2.    Plaintiff's Motion for Summary Judgment, **ECF No. 14**, is **GRANTED**; the case is remanded for an immediate award of benefits.

3.    Application for attorney fees may be filed by separate motion.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. **Judgment shall be entered for Plaintiff** and the file shall be **CLOSED**.

DATED April 10, 2019.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE